UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,

    vs.

ERIC CELESTINO,

        Defendant.

Criminal No. <u>24-cr-10252-LTS</u>

## GOVERNMENT'S SENTENCING MEMORANDUM

The defendant, Eric Celestino, has spent the majority of his adult live selling drugs and committing other serious crimes in our community, resulting in his classification as a career offender. A 60-month sentence in this matter would communicate a clear message to the defendant, that society has laws that he simply must follow. The defendant is not merely a drug dealer. He is not merely an H-Block gang member. And he is not merely an individual who has repeatedly found himself involved in incidents related to drug trafficking and firearms over the past fifteen years. Instead, he is each and every one of these things. Not just because I say so, but because he has earned these characterizations during his life of crime.

On December 17, 2025, the defendant pleaded guilty to Count One of the Indictment in Criminal No. 24-cr-10252 charging conspiracy to distribute and possess with intent to distribute cocaine and cocaine base. Given the sentencing ranges contemplated in the United States Sentencing Commission's Guidelines Manual, and the statutory sentencing factors set forth in Title 18, United States Code, Section 3553, the government recommends that the Court sentence the Defendant to 60 months imprisonment and 36 months supervised release. For the reasons set forth herein, the recommended sentence is sufficient, but not greater than necessary, to achieve the goals of sentencing.

1

In this course of his participation in H-Block gang-related drug trafficking, the defendant conspired with several of his co-defendants, including other H-Block gang members, and was a primary supplier of cocaine and crack cocaine to these co-defendants, who then engaged in street-level sales, including to an undercover police officer during the course this conspiracy. The defendant also conspired with several other H-Block gang member and associates in furtherance of his drug trafficking activities.

Along with the defendant's criminal history, the circumstances here justify the government's recommendation of a sentence of 60 months of incarceration. This, and other arguments raised herein, reflect the government's position that this was a very serious case.  The government also seeks a term of supervised release of 3 years with certain conditions including a restriction aimed at preventing the defendant from re-uniting with his H-Block gang associates upon release from prison and returning to drug dealing and other serious crimes.

## I.    BACKGROUND

### a.    H-Block Drug Trafficking – Operation Lost Raiders

For decades, Boston and the surrounding communities have been tormented by gang-related drug trafficking, shootings and violence. The H-Block street gang, originating in the 1980's as the "Humboldt Raiders" and born in the areas of Humboldt Avenue, Ruthven Street, Crawford Street, Homestead Street, Hutchins Street, and Harold Street in the Roxbury neighborhood of the city has formed into one of the largest gangs in present-day Boston. Established through drug trafficking crews, H-Block has consolidated its power and influence as a city-wide gang, by expanding their drug trafficking territory.  They have done so both within the city and throughout Greater Boston, through the utilization of violence and intimidation.

H-Block members have used their influence and status to become increasingly hostile

and confrontational toward law enforcement, business owners, and neighborhood residents. Older H-Block members with established reputations for violence have repeatedly committed armed home invasions of local drug dealers, stealing drugs, firearms, and money.  Younger H-Block members have become increasingly more aggressive in street-level drug distribution, as well as acts of violence against police officers and gang rivals, whether it be on the streets of Boston or even within state courthouse buildings.  In short, H-Block has used violence and general intimidation to dominate the neighborhoods to which they have expanded.

Operation Lost Raiders began in 2021 as a joint effort by the DEA and the BPD Special Investigations Unit to address an uptick in gang-related drug trafficking, shootings and violence. Since that time, the DEA and the BPD, alongside other state and federal agencies have been engaged in an investigation into the "H-Block" gang and their members and associates.

During the course of this investigation, law enforcement officers conducted over thirty controlled purchases of cocaine, cocaine base and fentanyl, during recorded drug deals that occurred with regularity in Boston and surrounding cities. Investigators also made additional drug seizures and uncovered an elaborate and extensive jail-based drug operation in a Massachusetts Correctional Institution, where paper saturated with synthetic cannabinoids and other substances were smuggled into the facility for sale to inmates.

   b.  CELESTINO's role in H-Block Drug Trafficking

As described in the Presentence Investigation Report ("PSR"), compiled by U.S. Probation and Pretrial Services ("Probation"), the law enforcement investigation demonstrated that the defendant was engaged in dangerous and flagrant criminal activity, specifically trafficking dangerous drugs over a significant period of time.  He was also committing this conduct, while on conditions of release in an unrelated state arrest for unlicensed possession of a

3

firearm and possession with intent to distribute a class D substance.  On that case, he was ultimately convicted and sentenced to two and a half years in the house of correction, with 18 months to serve and the balance suspended until July of 2026.

The defendant was an active co-conspirator, whom investigators learned through intercepted wire communications and surveillance was a supplier of cocaine for fellow H-Block gang members, including Trea Lankford, Dennis Wilson and Avery Lewis.

During the period of authorized monitoring and interceptions of wire and electronic communications in this investigation, in September of 2022, investigators discovered additional acts by the defendant in furtherance of this drug conspiracy, with Wilson and Lankford, other H-Block gang members.  On one occasion, on September 3, 2022, in an intercepted wire communication at 6:20 p.m., The defendant indicated to Wilson he was "at the crib." Wilson stated, "I need a zip" (28 grams of cocaine). The defendant responded, "I got you, get with me." Wilson asked, "You got a Cash App, bro?" The defendant acknowledged, offering, "I'll just text it to, text it to you right now." Later in the conversation, Wilson advised the defendant that he would be there in "12 minutes" and he was "rushing cause I got a jug (drug customer). That motherfucker rushing me." The defendant assured Wilson, "I'm have it ready for you." Notably, shortly thereafter, Wilson sent two transfers to the defendant via Cash App: $100 to at 6:34 p.m., and another $50 at 6:47 p.m.

Additionally, on September 5, 2022, Lankford ordered 28 grams of cocaine from the defendant. The defendant told Lankford that he was "over here in the crib in the small lot." Lankford responded, "Aight! I'm on, on my way, I need a umm… a thing hold on let me see." The defendant asked, "14?" Lankford stated, "Yeah fourteen, two of them" and that he was on

4

his way and would be there in a second. Simultaneous electronic surveillance showed Lankford driving the Wilson's 2019 Honda Accord away from the area of 205 Humboldt Avenue.

Surveillance personnel observed the defendant exit his residence, and enter Wilson's car that was parked in a small parking lot next to the building. The defendant met with Lankford for eight minutes and then Lankford left the area in Wilson's car, returning to 205 Humboldt Avenue where he then picked up Wilson. They made a brief stop and while Wilson was inside the location, Lankford engaged in a pertinent communication with an unidentified female who requested "the same thing: 40" ($40 dollars of cocaine). Lankford told her he got "some better shit" and he would be there in "20-30 minutes." Lankford and Wilson then drove to Route 93 North and surveillance was discontinued.

c.  Procedural History

On August 21, 2024, the defendant was indicted amongst ten H-Block gang members and associates, whom were all charged for a number of federal drug trafficking violations. *See United States v. Avery Lewis, et. al.,* 24-cr-10251-MJJ; *United States v. Trea Lankford, et. al.*, 24-cr-10252-LTS; *United States v. Timothy Hearns, et. al.,* 24-cr-10253- IT; and *United States v. Jerry Gray*, 24-cr-10254-AK.

The defendant made his initial appearance in federal court on September 17, 2024. *See* Criminal No. 24-cr-10252, D. E. 47.  Defendant was held and subsequently detained pending trial on the government's motion.  *See* Affidavit of Detention by United States, D.E. 12; [1] *see*

---

[1] This affidavit outlines a summary of the background of the investigation; the history of the H-Block street gang in Boston going back to the 1980's; present-day H-Block gang activity; the effects of drug distribution in the community and in the prison system; as well as a summary of the defendant's criminal history; that of the nine other charged defendants; and most importantly, their respective drug trafficking conduct, resulting in the four above-referenced Indictments.

*also* Order of Detention, D. E. 48.  The defendant consented to voluntary detention and was ordered detained on September 6, 2024. D. E. 47, 48.

On December 17, 2025, the Court conducted a Rule 11 hearing.  D.E. 172.  The defendant pleaded guilty to the Indictment in Criminal No. 24-cr-10252 charging conspiracy to distribute and possess with intent to distribute cocaine and cocaine base.  D.E. 171, 172. A sentencing hearing is currently scheduled for March 24, 2026. D.E. 177.

**II.      THE ADVISORY SENTENCING GUIDELINES**

The final PSR issued by U.S. Probation determined that the defendant's Total Offense Level was 29. *See* Presentence Report ("PSR") at ¶ 143. The defendant is a career offender based on his prior felony convictions for controlled substance offenses. *See* PSR at ¶ 140.  The government' position is that the defendant is accountable for at least 400 kilograms but less than 700 kilograms of converted drug weight. The PSR states that the defendant is being held accountable for 70 grams of cocaine. *See* PSR at ¶ 134.  The government has certified that the defendant is entitled to a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and (b).  *See* PSR at ¶ 141, 142.

The government agrees that the U.S. Probation has properly calculated the defendant's criminal history category at VI, based upon the defendant's significant criminal history (four scoreable criminal history points) and that he is also a career offender based on these convictions. *See* PSR at ¶ 145-147. There is a plea agreement between the parties, and the government is recommending 60 months in federal prison, followed by 3 years of supervised release.

### III.    SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)

The factors set forth in 18 U.S.C. § 3553(a) assist the Court in determining a sentence that is sufficient, but not great than necessary, to comply with the purposes of sentencing set forth in § 3553(a)(2). These factors include the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence for criminal conduct, to protect the public from further crimes of the defendant, and to provide for the needs of the defendant. They also require courts to consider the kinds of sentences available, and the GSR.

Consideration of the § 3553(a) factors demonstrates that a sentence of 60 months, followed by 3 years of supervised release, is the appropriate sentence in this case.

a.    Nature of the Offense

The nature and circumstances of the defendant's drug trafficking justify a significant sentence of 60 months.  In analyzing defendant's conduct and eventual arrest, the Court should first consider the brazen nature of the defendant's drug trafficking, supplying several H-Block gang members/co-conspirators, who then conducted dozens of controlled purchases with an undercover officer, amongst countless other street level drug deals. The defendant moved amongst several other members in gang-related drug trafficking operations over a significant period of time, and did all this while out on conditions of release for a serious firearm and drug dealing offense.

While the subject of ongoing wiretap intercepts and physical surveillance, he met repeatedly with his co-conspirators for the purpose of re-supplying them.  As referenced above,

the defendant also conspired with several other H-Block gang member and associates, including Lewis, Lankford, and Celestino, in furtherance of his drug trafficking activities.

Each part of this conduct also demonstrates the seriousness of the defendant's offenses, based on the period of time in which he engaged in this activity, the defendant's readiness to sell more, and his desire to further his drug trafficking business.

Cocaine is a deadly drugs that have created havoc in the United States, and more specifically in Massachusetts, over the past several years. The tragedies of drug abuse and overdose deaths are sadly too familiar to many families across this District.

When considering the nature of the drug trafficking involved in this investigation, it remains critical not to lose sight of the devastating effects cocaine use has on users and communities where dealers like these defendants who are selling drugs for profit. Fatalities involving cocaine are increasing, and cocaine was involved in 15,025 overdose deaths in the first six months of 2023, according to provisional CDC data. Cocaine-related deaths have increased every year since 2015, often because these drug consumers purposely use both stimulants and opioids as a result of their drug addiction. [2]

The defendant was part of the narcotics supply chain that contributed to such tragedies. Further, the defendant was not only engaged in drug trafficking, but also did so in a conspiracy with other H-Block gang members and associates. Drug trafficking is a risky endeavor, and the defendant, who is no stranger himself to being involved in drug dealing and other serious crimes, made himself available to an increased potential of violence associated with his behavior.

---

[2] DEA, 2024 NATIONAL DRUG THREAT ASSESSMENT at 35 (2024), *available at* https://www.dea.gov/sites/default/files/2024-05/NDTA_2024.pdf (last visited August 28, 2024)

b.  Characteristics of the Defendant

The government acknowledges the prompt acceptance of responsibility by this defendant. The defendant, however, has several aspects of his background that stand out. First, the defendant has previously engaged in, and been convicted of, drug dealing and firearm-related offenses numerous times, which is relevant to the facts here. He has now engaged in this same conduct again, after having served prior incarcerated and suspended house of correction sentences in Massachusetts.

The defendant has a substantial criminal record, and has notably had pending cases, or has been incarcerated on either committed sentences or violations of probation for a significant portion of his adult life. *See* PSR at ¶¶ 145 - 158.  Accordingly, the defendant, as referenced above, is a career offender – a designation he justly deserves. *See* PSR at ¶ 140.

The defendant has numerous convictions, including on a variety of drug distributions and firearm offenses. See e.g., PSR, including at ¶148 (possession of a firearm and ammunition without a permit, sentenced to 3 years of probation in 2011); ¶149 (possession with intent to distribute class A drugs, sentenced to 6 months suspended for a period of 1 year in 2015, and ultimately found in violation of that probation); ¶150 (arrested in 2020 for carrying a firearm without a license and possession with intent to distribute a class D drug, for conduct that he was on pre-trial conditions of release while he engaged in this conspiracy.  The defendant was ultimately sentenced in 2024 to 2 and a half years imprisonment, with 18 months to serve and the balance suspended until July of 2026). As stated above, the defendant was on conditions of release for this offense in a state district court at the time of his conduct in this investigation.

Therefore, any attempt to shoehorn the defendant into the designation that he is just another typical career offender drug dealer thereby deserving of drug sentencing disparity

9

reduction completely misses the mark. The sentencing in this case deserves to be treated differently than a simple "hand-to-hand" drug dealing case.  Along with the defendant's criminal history, the circumstances here justify the government's recommendation of a sentence that is significant but still below the guideline sentencing range determined by the U.S. Probation office – a sentence of 60 months of incarceration. This, and other arguments raised throughout this memorandum, reflect the government's position that this is a very serious case.

As summarized above, the defendant has convictions for drug distribution and violence in his past.  Yet, the most significant sentence of incarceration was 18 months in the house of correction on a firearm and drug distribution offense (see PSR at ¶150).  He has failed to learn anything from those experiences, and other shorter terms of incarceration or probation. Accordingly, the defendant should be punished in a manner that communicates to him the seriousness of his criminal behavior.

Another important aspect of this sentencing is the relevant characteristics of the defendant other than the criminal history issues discussed above. See 18 U.S.C. § 3553 (a)(1).  In the PSR, the report outlines that the defendant has repeatedly been identified for his gang involvement in the past and he has been identified by law enforcement as a member of the H-Block gang based out of Boston. While the defendant disputed the assertion to US Probation that he was a gang member, he acknowledged growing up in H-Block gang territory and being associated with members of H-Block in the past and in this instant offense. Gang association is an important sentencing consideration.  See Huebner, et al., "Gangs, Guns, and Drugs: Recidivism Among Serious, Young Offenders" Criminology & Public Policy Volume 6 Issue 2 (2007) ("Gang membership, even within a high-risk sample, emerged as a significant predictor of recidivism as more traditional risks for offending, such as gun use, demographics, prior

convictions, and community disadvantage, did not"); *See also United States v. Johnson*, 184 Fed. Appx 746 (10th Cir. 2006) (at sentencing, gang membership was significant and appropriate for inclusion in the PSR because... "gang members are more likely to engage in criminal activity and perhaps related violence than ordinary citizens"); *United States v. Aguirre-Roche*, 2008 WL 5401440 (11th Cir. 2008) (district court properly considered defendant's gang membership at sentencing). The government seeks to prevent the defendant from returning to his criminal conduct of drug dealing and gang activity upon his release from incarceration.

c.   Specific and General Deterrence

The Court should also consider deterring both the defendant and others. *See* 18 U.S.C. § 3553(a)(2)(B) (the court may impose a sentence "to afford adequate deterrence to criminal conduct").

### i.   The Need for Specific Deterrence

The defendant has served time in jail before (*see* PSR at ¶¶ 150), but he has clearly not gotten the message of compliance with society's laws from his prior jail term. This sentence needs to make that point unmistakably clear, that his conduct has consequences.

### ii.   The Need for General Deterrence

The desire to achieve general deterrence is a challenging task. However, there is valuable research and literature that provide guidance on the lethal effects that drugs and gangs have on society. *See* Decker, et al., "On Gangs" (Temple University Press, 2022), p 154 ("[g]angs offer many advantages to those who sell drugs, regardless of whether drugs are distributed among gang members in an instrumental or informal manner. These advantages include opportunity, economic, substance, and protective components. Gang membership offers the convenience of a (generally) reliable point person or contact who provides the access to drugs"). *See also*

11

Kennedy, "Deterrence and Crime Prevention: Reconsidering the Prospect of Sanction (Routeledge Studies in Crime and Economics 2009), p. 78 ("There is an embarrassment of riches on the high rate of gang offending").  *See also* Braga, et al., "New Approaches to the Strategic Prevention of Gang and Group Involve Violence" in C. Ronald Huff (ed.); "Gangs in America (Sage Publications 2002) (gangs representing less than 1 percent of the population were responsible for at least 60% of the homicides in Boston and at least half the homicides in Minneapolis, Baltimore, and Indianapolis).

The requested sentence serves important purposes of general deterrence.  The government seeks that a message be sent to others, like the defendant, who associate with street gangs and have been in and out of the criminal justice system.  The message should be clear, that drug dealing in our communities will not be tolerated.  *See* 18 U.S.C. § 3553(a)(1)(B) (sentencing goals include the need to afford adequate deterrence to criminal conduct).

Here, the messages that take into account the seriousness of drug dealing and the need to protect public safety by imposing significant sentences can help make communities safer and deter others from committing the same crimes.  The recommended sentence here will communicate the seriousness of the offense to the defendant.  Equally important, such a sentence will tell similarly situated individuals that if they too continue their criminal conduct and are also convicted in federal court, they too will face serious prison sentences.

### iii.  The Need to Protect the Public

Lastly, and perhaps most importantly, this Court should consider the need to protect the public from the defendant. *See* 18 U.S.C. § 3553(a)(2)(C) (the court may impose a sentence to "protect the public from further crimes of the defendant").  The defendant's penchant for drug

dealing, coupled with his gang involvement and history of serious criminal offenses, provide a deadly combination that simply must be addressed by the Court's sentence.

### d.  Supervised Release Conditions

The government also recommends a term of 36 months of supervised release.  In addition to the standard conditions, the government requests that the Court impose the special conditions set forth in the recommendations made by U.S. Probation, and below, including associational restrictions and curfew.

### i.  Curfew and Geographic Restriction

The government requests that the Court impose a curfew from 7:00 p.m. to 6:00 a.m. for the first 15 months after the defendant is released from prison or any community corrections confinement (either under BOP or Court supervision).  *See, e.g.,* "Maximum Impact: Targeting Supervision on Higher-Risk People, Places and Times," Pew Center for the States Public Policy Brief (March, 2009) (concluding that Probationers are "at the highest risk of re-arrest during the first few months of community supervision," that arrest rates after 15 months were substantially lowered, and thus recommendation that probation resources be "front-end loaded" to achieve maximum effect).

The government also recommends that the Court impose a geographic restriction from the defendant entering the exclusion zone of H-Block territory, (including Humboldt Avenue, Ruthven Street, Crawford Street, Homestead Street, Hutchins Street, and Harold Street in the Roxbury neighborhood of Boston) without the express permission of the U.S. Probation Office. This area is delineated and bounded by Seaver Street (South); Walnut Ave (West); Marin Luthor King, Jr. Blvd (North); Warren Street (East); and Elm Hill Ave (Southeast).  The government further suggests that the defendant's probation officer should be allowed to relax the recommended curfew for work or school and that it be enforced by electronic monitoring.

### ii. Gang Association

During the period of supervised release, the defendant should be prohibited from contacting, or being in the company of other individuals who the government asserts are members, associates or affiliates of the H-Block street gang (many of whom are convicted felons that the defendant is barred by the standard conditions of probation from contacting in any event). The defendant should be drug tested while on supervised release, and the defendant should also be provided with any available vocational training while in prison and that he take advantage of any such classes and/or training while on supervised release, to hopefully move him away from gang-related activities of his past. The government also provides the Court and the probation office with a list of the individuals, *see* Attachment A. The government reserves the right to add to this list at sentencing.

## IV.    THE GOVERNMENT'S RECOMMENDATION

For the foregoing reasons, those contained in the PSR, and those to be presented at the sentencing hearing, the government requests the following sentence:

- a term of 60 months' imprisonment;

- a fine within the Guidelines, as calculated by the Court, unless the Court finds that the defendant is not able to pay a fine;

- a term of 36 months' supervised release with the conditions referenced above and recommended by probation; and

- a special assessment of $100.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By:    /s/ John T. Dawley, Jr.
       John T. Dawley, Jr.
Dated: March 18, 2026          Assistant United States Attorney

14

## **<u>CERTIFICATE OF SERVICE</u>**

This is to certify that I have this day served a copy of the foregoing upon all counsel of record by electronic filing notice.

/s/ John T. Dawley, Jr.
Assistant U.S. Attorney

Dated: March 18, 2026