UNITED STATES FEDERAL DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| V. | ) CRIMINAL No. 1:24-cr-10252-LTS-5 |
| | ) |
| ERIC CELESTINO | ) |
|     Defendant | ) |
| | ) |

SENTENCING MEMORANDUM OF DEFENDANT ERIC CELESTINO

Eric Celestino has pled guilty to the charges in the above-captioned case and is scheduled to be sentenced on Tuesday, March 24, 2026. Mr. Celestino and the government have offered a "C" plea to this court requesting a sentence of sixty months in the Bureau of Prisons followed by thirty-six months of supervised release. Mr. Celestino's co-defendants who have already been sentenced in this case include Avery Lewis, sentenced to 46 months incarceration, Trea Lankford, sentenced to 96 months incarceration, and Dennis Wilson, sentenced to 77 months incarceration. If the court accepts the "C" plea submitted by Mr. Celestino and the government then his sentence of 60 months incarceration will be squarely in the middle of the range of sentences imposed thus-far in this multiple co-defendant conspiracy case.

Mr. Celestino submits this memorandum to better acquaint the court with who Mr. Celestino is as a person, his connections and support in the community, and to request that the sentence be imposed *nunc pro tunc* to September 17, 2024 and ordered to run concurrent with the now discharged state sentence that he served on 2002 CR 1322 out of the Roxbury Division of the Boston Municipal Court.

ERIC CELESTINO'S BACKGROUND AND CHARACTER

As the Court has seen in the Pre-Sentence Investigation Report ("PSR"), Mr. Celestino was not born into privilege. He was raised communally and in-turn by his single mother, his grandmother, and his older sister. He lived in impoverished communities in Roxbury and Dorchester and also in the

Dominican Republic. He grew up without positive role male models and witnessed crime and violence at a young age and throughout his youth and adolescence. He also was exposed to drug use and used drugs himself at a young age.

Growing up primarily in the Humboldt Avenue area of Roxbury, Mr. Celestino was essentially "born into" the H-Block gang. He grew up with and was friendly in the neighborhood with many members of H-Block, including some of his co-defendants in this case, by simple virtue of being the same age in the same place at the same time.[1] Mr. Celestino did not grow up in Wellesley or Newton and then travel to Roxbury and ask to join a gang. He was born and raised in a community plagued by gang activity. Mr. Celestino's plans for the future do no involve any criminal behavior, organized or otherwise.

It would be easy for Mr. Celestino to make excuses for his past and current ensnarement in the criminal legal system by saying that he is merely a product of his environment, but he rejects that line of thinking. Mr. Celestino is not a child. He is a man who accepts and acknowledges his own mistakes and this is why he decided to take responsibility early-on in the prosecution of the instant case. Notably, this case is centered on activity that took place around 2021. Now, in 2026, Mr. Celestino has already left his past life behind. He has pled guilty and looks forward to getting to the other side of his punishment and completely moving on with his life.

Mr. Celestino is a complicated and nuanced person, as we all are. He is not defined by his environment or his past missteps. He has already made significant progress in escaping the type of thinking and reasoning that led to him being in front of the Court on this case. His development and plans for the future will be discussed in greater length and detail in later sections of this memorandum. Indeed, the "life of crime" that the government expounds on at considerable length in its sentencing

---

[1] Mr. Celestino maintains that he is not an active member of H-Block but he takes responsibility for his actions that he has pled guilty to in this case and does not deny the charges. He disputes only his actual membership in any organized group.

memorandum is a life that Mr. Celestino has already left behind. The life that lies in front Mr. Celestino is a life of positivity, creativity, and, most importantly, responsibility.

TIES TO THE COMMUNITY AND COMMUNITY SUPPORT

Mr. Celestino is part of a loving family and has built up positive associations in Boston. When he is eventually released from incarceration he will be the primary caretaker for his mother, Jacqueline Lopez, who is now ailing medically with a heart condition and living alone in Boston. She has also suffered life threatening events in the past including a stroke, a seizure, and a blood clot. Each time, Ms. Lopez would have died from these events if Mr. Celestino hadn't been present caring for her and acting swiftly to get her emergency medical attention.

He also has the support of his sister and his brother in law. Mr. Celestino and his sister Carolina grew up together and remain close. Mr. Celestino is the central male figure in the lives of Carolina's two children and he has loved teaching them and providing for them ever since they were born. When he is eventually released from prison, Mr. Celestino cannot wait to redouble his efforts at being a positive influence in their lives.

His brother in law, Rahdy Pena, has been an incredibly positive influence in Mr. Celestino's life. Starting when Mr. Celestino was 10 yrs old Mr. Pena would bring Eric to Boston College, his alma mater, to go swimming, play basketball, or play video games in the dorms. When Mr. Pena was a new real estate agent he would bring Mr. Celestino with him to look at properties, distribute marketing material, and even do paint jobs. Mr. Pena is now a successful broker who has agreed to take Mr. Celestino under his wing and help him try to get him a job through his real estate connections, even if only as an assistant, upon his release from the Bureau of Prisons.

Mr. Pena's mother, Carmen Torres, since passed, was the principal of the Boston Arts Academy and tried to get Mr. Celestino into that school as he was finishing middle school. Although his grades were not good enough to get placed in the Arts Academy, Ms. Torres remained a positive force in Mr.

Celestino's life and encouraged him to stick with his art as she believed it would be his escape from the life of the streets that he was born into.

Mr. Celestino is still an an artist, specifically a painter, and his mentor Rob Gibbs has been supportive throughout the process of Mr. Celestino's dealing with this case and will remain available to him as a creative mentor when Mr. Celestino is eventually released. Rob Gibbs founded Artists for Humanity in South Boston. Another painter, Mr. Gibbs does murals all over Boston and is internationally known. Mr. Celestino participated in the Artists for Humanity program as a youth and intended to remain in the program to become a mentor himself to the youth and then transition into college. This did not end up happening, because he started getting into trouble in his community which the court is already aware of, but Mr. Celestino reflects daily on how Mr. Gibbs signs off on all of his emails: "Grow On, Flow On. Peace & Love."

Mr. Celestino is not just all talk. He has a legitimate future ahead of him. He understands financial systems and has made money in the past day-trading in the stock market and trading in Bitcoin. Mr. Celestino has even recommended books on financial literacy to undersigned counsel including Rich Dad, Poor Dad by Robert Kiyosaki. Mr. Celestino also intends to get certified in computer coding as another avenue earning an honest living when he is eventually released. To say that Mr. Celestino is already rehabilitated and committed to leaving criminal and street thinking and activity behind him is an understatement.

REQUEST FOR CONCURRENT TIME IMPOSED NUNC PRO TUNC TO SEPTEMBER 17, 2024

When Mr. Celestino was charged in this case he was serving a sentence in the South Bay House of Correction for Suffolk County, MA, on 2002 CR 1322 out of the Roxbury Division of the Boston Municipal Court. Mr. Celestino was arraigned on this matter on September 17, 2024, via video-conference from the South Bay House of Correction. Mr. Celestino waived his rights to a prompt

4

detention hearing and also waived his rights of extradition under the Interstate Agreement on Detainers ("IAD").

Had he not entered those waivers, the government and the court would have had to either delay prosecution or take custody, even if only temporarily, of Mr. Celestino from the state of Massachusetts, In which case, Mr. Celestino would have been accruing jail credits toward the sentence to be imposed in this case ever since his arraignment. As a result of entering those waivers, and making the prosecution of this case more smooth for all parties involved, Mr. Celestino did not begin accruing jail credits toward the future sentence in the instant case until his state sentence expired in 2025 and he was taken into custody by the United States Marshal Service. He now stands before the court ready to be sentenced with fewer jail credits than he would have had if he had not waived his rights under the IAD.

The Bureau of Prisons is responsible for the calculation of sentences. When calculating a federal sentence, "[t]he BOP must decide (1) when the sentence commences and (2) to what extent the defendant in question may receive credit for any time already spent in custody." *Sweat v. Grondolsky*, 898 F. Supp. 2d 347, 351 (D. Mass. 2012).[2]

Despite the BOP's responsibility to calculate the sentence, the Court has the discretion to order that the BOP run this sentence concurrent with the now discharged state sentence. 18 U.S.C.A. § 3584(a) affords that "if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively." The fact that Mr. Celestino's state sentence is now discharged does not obviate the court's ability to run his sentence

---

2 Mr. Celestino is not entitled to *Willi*s credit, *Willis v. United States*, 438 F.2d 923, 925 (5th Cir. 1971), because his state sentence expired before the imposition of the sentence on the instant matter. "An individual is eligible for *Willi*s credit from the BOP when: "(1) his federal and state sentences are concurrent; and (2) his federal sentence is to run longer than the state sentence (not counting any credits)." *Dixon v. Beckstrom*, Civil Action No. 11-CV-0079-HRW, 2011 WL 3608529, at *1 n.2, 2011 (E.D. Ky. Aug. 16, 2011) (citing BOP Program Statement ('PS') 5880.28, *Sentence Computation Manual*); *see also Warden, FMC Devens*, 682 F. Supp. 3d 97, 98-100 (D. Mass. 2023) (citing *Taccetta v. Fed. Bureau of Prisons*, 606 F. App'x. 661, 664 (3d Cir. 2015)).

on the instant case concurrent with the now discharged state sentence. *United States v. Hill,* 187 F.Supp.3d 959, 968 (N.D. Illinois 2016) ("§ 3584's distinction between discharged and undischarged sentences, when applied to a defendant like Hill who is subject to a federal statutory minimum sentence and who has served a discharged state sentence for relevant conduct, is an arbitrary distinction that violates the Fifth Amendment's due process guarantee.")

Thus, it is within the discretion of this court to order that Mr. Celestino's sentence run concurrent with his now discharged state sentence and it is in the interests of justice that this court impose the sentence *nunc pro tunc* to September 17, 2017, to account for the jail credits that Mr. Celestino would have been entitled to if he had not waived his rights under the IAD.

CONCLUSION

The sentence recommended by the parties in the plea agreement is fair, just, and in line with the sentences imposed on his co-defendants. Mr. Celestino is a thoughtful and caring person with an artistic streak who is focused on working and investing. He requests that this Court recommend RDAP participation in the BOP and that the court accept and impose the agreed sentence of 60 months, *nunc pro tunc* to September 17, 2024, and concurrent with the discharged sentence on 2002 CR 1322, to be followed by 36 months of supervised release.

Respectfully submitted,
ERIC CELESTINO,by his attorney:
 */s/  Daniel D. Pond*
Daniel D. Pond, BBO 679153
132 Lincoln St., Suite 5L
Boston, MA 02111
(617) 302-7743
dan@danpondlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically
to the registered participants as identified on the Notice of Electronic Filing (NEF) and that there are no
other participants who need to be served.

Signed March 20, 2026,      */s/  Daniel D. Pond*
Daniel D. Pond